## Lang v. United States (No. 1303).[1]

1. PRINTING PRESS.
  A printing press is a machine used in letter-press printing on paper and like substances, and is designed to produce books, newspapers, magazines, circulars, handbills, and the like.

2. MECHANISM FOR MARKING COLLAPSIBLE METAL TUBES.
  The article here, a printing mechanism for lacquering and marking collapsible metal tubes, is not used by "the art or trade of letter-press printing," and it was properly assessed as a manufacture of metal not specially provided for under paragraph 199, tariff act of 1909.

United States Court of Customs Appeals, March 25, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33883 (T. D. 33795).

[Affirmed.]

*Brown & Gerry* for appellant.

*William L. Wemple*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, of counsel; *Thomas J. Doherty*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The present merchandise consists of a machine which prints or stamps labels upon collapsible metal tubes such as are used for holding toilet pastes of various kinds. The appraiser returned the same

---

[1] Reported in T. D. 34327 (26 Treas. Dec., 557).

for duty at 45 per cent ad valorem under paragraph 199 of the tariff act of 1909 as a manufacture of metal not specially provided for, and duty was assessed thereon in accordance with this return.

The importer filed his protest against the assessment, claiming the article to be a printing press, dutiable under that name at 30 per cent ad valorem under the provisions of paragraph 197 of the act of 1909.

The protest was submitted upon evidence to the Board of General Appraisers and was overruled, from which decision the importer now appeals.

The following is a copy of paragraphs 197 and 199 of the tariff act of 1909:

197. Cash registers, jute manufacturing machinery, linotype and all typesetting machines, machine tools, printing presses, sewing machines, typewriters, and all steam engines, thirty per centum ad valorem; embroidery machines and lace-making machines, including machines for making lace curtains, nets, or nettings, forty-five per centum ad valorem: *Provided, however*, That all embroidery machines and Lever or Gothrough lace-making machines, machines used only for the weaving of linen cloth from flax and flax fiber, and tar and oil spreading machines used in the construction and maintenance of roads and in improving them by the use of road preservatives, shall, if imported prior to January first, nineteen hundred and eleven, be admitted free of duty.

199. Articles or wares not specially provided for in this section, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem.

The sole question presented by the case is whether the present article is a printing press within paragraph 197 above copied. If it is a printing press the protest should have been sustained, otherwise it was correctly overruled.

The machine in question contains a cylinder upon which is clamped a rubber mat or pad bearing the words and designs which are to be printed upon the collapsible metal tubes. By the action of certain rollers, this pad is evenly supplied with paint of one or more colors. The collapsible metal tube which is to be printed is placed in the machine upon a revolving form. This form holds it in its tubular shape and at the same time brings it in contact with the paint-bearing rubber mat. By means of this impression the tube is stamped or printed with the words and designs borne by the rubber mat. The machine in question can not be used with metal types or adjustable rubber letters or designs, nor can it be operated so as to print upon any flat surface. Nor can ink be used as the printing medium upon the machine, the process requiring paint or lacquer. The machine would not be useful for printing upon cardboard or paper, and probably would not print upon paper at all. It is constructed of metal and may be operated either by hand or by power.

As already stated, the sole question made by the present record is whether the machine just described is a printing press. The following definitions will aid in answering this question.

Oxford Dictionary:

*Printing press.* An instrument or machine for printing on paper, etc., from types, blocks, or plates.
*Press.* sb.
13. A machine for leaving the impression of type upon paper, vellum, or other smooth surface; a machine for printing, a printing press.

Century:

*Printing press,* n. A machine for taking impressions from an inked surface upon paper.

Worcester:

*Printing press,* n. A press for printing books, newspapers, etc.

Standard:

*Printing machine,* n. Any machine for printing, as on cotton cloth; particularly, an elaborate machine for doing fine or rapid printing, as on paper; a printing press.
*Printing press,* n. 1. Same as printing machine. 2. A mechanism for printing operating by pressure, as the Adams *printing press.*

In the case of Petry *v.* United States (3 Ct. Cust. Appls., 348; T. D. 32906), this court, speaking through Judge Smith, commented upon the foregoing definition of the Standard Dictionary, and adopted a definition of the disputed term in the following language:

The Standard Dictionary does say that the expressions "printing press" and "printing machine" are used interchangeably. Nevertheless, we take judicial notice of the fact that while every printing press may be correctly referred to as a printing machine, not every printing machine can be properly called a printing press. As commonly and generally understood, printing presses are those printing machines which are chiefly used by the art or trade of letter-press printing on paper and like substances and which are designed and intended to produce such printed matter as books, newspapers, magazines, periodicals, circulars, handbills, etc.

In comparing the foregoing definitions with the actual article at bar the court concludes that the present machine is not a printing press, notwithstanding the fact that it makes a printed impression upon the collapsible metal tubes. It will be observed that the Century definition, above given, limits the term "printing press" to such machines only as make impressions from an inked surface upon paper. It will be noted that the present machine can not use either ink or paper. The Worcester definition, above copied, applies the term in question to such presses only as print books, newspapers, etc. The present machine, however, can not print books or newspapers, nor anything which generically stands in association with such printed articles. The Oxford definition, above given, applies the disputed term to such machines as print upon paper, vellum, or other smooth surface from types, blocks, or plates. In respect to the

present article, however, the rubber pad or mat can not fairly be called "types, blocks, or plates," nor can the collapsible metal tubes be called "paper, vellum, or other smooth surface." The present machine, therefore, is thus excluded from each of the definitions just referred to.

The definition given by the Standard is, indeed, broader than those already noted, but that definition was not followed by this court in the Petry case, *supra*, wherein the court said that "as commonly and generally understood, printing presses are those printing machines which are chiefly used by the art or trade of letter-press printing on paper and like substances, and which are designed and intended to produce such printed matter as books, newspapers, magazines, periodicals, circulars, handbills, etc." The machine now at bar is also excluded from the terms of the foregoing definition; for it is not "used by the art or trade of letter-press printing;" it does not print at all upon paper or like substances; it is not designed to produce such printed matter as is specified in the given definition nor any printed matter which generically belongs therewith.

The present article therefore is properly a machine which operates a rubber stamp, rather than a printing press; and in this view of the case the decision of the board was correct and the same is *affirmed*.