UNITED STATES *v.* DRAEGER SHIPPING CO. (No. 3300) [1]

[1] T. D. 44561.

United States Court of Customs and Patent Appeals, January 21, 1931

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell* and *Ralph Folks*, special attorneys, of counsel), for the United States.
Submitted on record by appellee.

[Oral argument October 8, 1930, by Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported at the port of New York certain die plates, matrix plates, sealers and rollers, parts of certain machines designated by it as seal-embossing and printing presses. These were classified by the collector as manufactures of metal not specially provided for, under paragraph 399 of the Tariff Act of 1922. The importer protested, claiming them to be free of duty under paragraph 1542 of the same act, which provides, in part, for linotype and all typesetting machines, and, alternatively, as dutiable at 30 per centum ad valorem under the provision "all other machines or parts thereof, finished or unfinished, not specially provided for," in paragraph 372 of the same act. No contention has been made in this court upon that portion of the protest resting upon said paragraph 1542, and it will be considered as abandoned.

Paragraph 372, and the material portions of paragraph 399, are as follows:

PAR. 372. Steam engines and steam locomotives, 15 per centum ad valorem; sewing machines, and parts thereof, not specially provided for, valued at not more than $75 each, 15 per centum ad valorem; valued at more than $75 each, 30 per centum ad valorem; cash registers, and parts thereof, 25 per centum ad valorem; printing presses, not specially provided for, lawn mowers, and machine tools and parts of machine tools, 30 per centum ad valorem; embroidery machines, including shuttles for sewing and embroidery machines, lace-making machines, machines for making lace curtains, nets and nettings, 30 per centum ad valorem; knitting, braiding, lace braiding, and insulating machines; and all other similar textile machinery or parts thereof, finished or unfinished, not specially provided for, 40

per centum ad valorem; all other textile machinery or parts thereof, finished or unfinished, not specially provided for, 35 per centum ad valorem; cream separators valued at more than $50 each, and other centrifugal machines for the separation of liquids or liquids and solids, not specially provided for, 25 per centum ad valorem; combined adding and typewriting machines, 30 per centum ad valorem; all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem: *Provided*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

PAR. 399. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 40 per centum ad valorem.

The court below sustained the protest under said paragraph 372, and the Government has appealed.

On the hearing in the court below, one witness was called on behalf of protestant, Louis William Eckels, an erector and demonstrator for the Hoffman Type & Engraving Co., for whom the goods in question were imported. This witness testified that the die plates and matrix plates in question were parts of a seal-embossing and printing press known as a Rapid V. In answer to inquiries this witness testified:

A. The Rapid press is a machine which turns out labels, all sorts of labels for bottles, any make wanted. It is a printing press and embosses; it prints and embosses at the same time. Embossing is a form of raised letter; instead of having a flat label, it is an embossing or raising which is done. It is practically more of a printing press than anything else.

Q. The printing portion is done with what?—A. Ink.

    *        *        *        *        *        *        *

Q. And the machine for which these parts were imported, its appearance; does it look anything like a printing machine?—A. Yes, sir; it has the appearance of a printing machine.

Q. Its operation generally, is it the same as a printing machine?—A. Well, there are several types; this one has instead of an eccentric movement back and forth, it is up and down.

Q. The plate you spoke of, does that perform the same function as ordinary type in a press?—A. The press die, yes, sir; it takes the place of type, instead of setting up individual letters; it is made in one plate.

Q. So that the function it performs is printing with ink?—A. Printing with ink.

The same testimony also applies to the sealer and roller in question.

It fairly appears, from the testimony of this witness, that the machine in question is for all substantial purposes a printing press; that while it incidentally performs embossing functions it is, at least in the opinion of this witness, more a printing press than anything else.

If the machines in question, of which these importations are parts, are printing presses, then it follows that the same are not dutiable under the provision for all other machines or parts thereof, not specially provided for in said paragraph 372.

We had a similar matter before us in *Murphy & Co.* v. *United States*, 13 Ct. Cust. Appls. 256, T. D. 41201. The contest in that case was between manufactures of metal, not specially provided for, and all other machines or parts thereof, not specially provided for, the same paragraphs of the statute being involved there, as here. In analyzing the provisions of paragraph 372, we called attention, in that case, to the fact that some of the provisions in the statute, enumerating certain types of machines, provided for parts thereof, and some did not. From this we came to the conclusion that the omission of the provision for parts in some instances was intentional on the part of the Congress, and that we ought not, by judicial interpretation, to interpolate this language where it had not been used. We also concluded, in that case, that the catchall provision for all other machines and parts thereof, not specially provided for, at the end of this paragraph, was not intended to include parts of anything that had been heretofore mentioned in the paragraph.

The same argument holds good here. The provision for printing presses is not followed in paragraph 372 with any provision for parts thereof; hence, if the machines are printing presses, parts of the same are not included within this paragraph when imported separately.

The collector's classification must be understood as a finding by him that the parts in question were parts of printing presses and, hence, not dutiable under paragraph 372. In our opinion, the testimony of the witness, Eckels, is corroborative of that finding.

It is contended that our opinion and judgment in *Petry & Co.* v. *United States*, 3 Ct. Cust. Appls. 348, T. D. 32906, is in conflict with this conclusion. We do not so understand it. In that case, certain machines especially adapted to the gold lettering of leather, cardboard, and similar heavy materials, and to the stamping or embossing thereon of gold designs, were in question and were classified as manufactures of metal under paragraph 199 of the Tariff Act of 1909. The importer protested that the articles were dutiable as printing presses under the provisions of paragraph 197 of the same act. This court held that they were not printing presses. Smith, J., who delivered the opinion of this court, there said:

As commonly and generally understood, printing presses are those printing machines which are chiefly used by the art or trade of letterpress printing on paper and like substances and which are designed and intended to produce such printed matter as books, newspapers, magazines, periodicals, circulars, handbills, etc. The machines under consideration can be used, it is true, for letterpress printing on paper. Mr. Hinze's description of them, however, shows almost to a

demonstration that they were not built for that kind of work and that any letter-press printing which they may do is of a character that is incidental and entirely subordinate to the general purpose for which they were constructed. We think that it is apparent from the evidence in the case that the goods imported are not primarily intended to do the work which ordinarily falls to the printing press, but that they are specially built and generally and chiefly used for the embossing and gold stamping of various substances, particularly leather used by manufacturers of pocketbooks and notebooks.

A following case was *Lang* v. *United States*, 5 Ct. Cust. Appls. 199, T. D. 34327, where a machine for printing or stamping labels upon collapsible metal tubes was involved. We there held this to be not a printing press, the gist of the decision being as follows:

The machine now at bar is also excluded from the terms of the foregoing defi-nitions; for it is not "used by the art or trade of letterpress printing"; it does not print at all upon paper or like substances; it is not designed to produce such printed matter as is specified in the given definition nor any printed matter which generically belongs therewith.

It is quite evident the facts in the two cases cited were not at all like these in the case at bar. There the machines were embossing machines, here they are printing presses. It is true these machines raise the surface of the paper or other material before it is printed upon; the primary purpose, however, is printing.

We are of opinion the court below was in error in finding upon this record that the articles of importation were properly dutiable under said paragraph 372, and in overruling the collector's classifi-cation. The judgment of the United States Customs Court is, therefore, *reversed*.

### DISSENTING OPINION

GARRETT, Judge: I respectfully dissent.

The court below made the following findings of fact:

(1) That mechanisms of which the articles under consideration are a part are machines in the form of presses used for printing and embossing.
(2) That such machines perform the dual function of embossing and printing.
(3) That they are not in themselves printing presses.
(4) That they are not in themselves embossing presses.

In my opinion these findings are supported not simply by the pre-ponderance of the evidence but by *all* the evidence, except the single expression of the one witness, Eckels, "It is practically more of a printing press than anything else."

If this were all, it might be controlling, but it will be noted from the testimony, as quoted in the majority opinion, that the sentence is only a part. It follows immediately after other testimony describing with exactness just what the machines do.

It is perfectly obvious from this testimony that the machine without the printing feature would be useless for the purposes for which designed; it is equally obvious that it would be so without the embossing feature. It is, therefore, a combination machine having two functions to perform, neither one of which dominates the other. I therefore *concur* in the judgment of the Customs Court.